## UNION SPECIAL MACH. CO. v. MAIMIN.

(Circuit Court, E. D. Pennsylvania. January 18, 1911.)

No. 26, October Sessions, 1904.

1. PATENTS (§ 312*)—INFRINGEMENT—EVIDENCE.
   Where defendant purchased at second hand sewing machines made by complainant, which when made over and resold by him were equipped with a patented device used on some of the machines made by complainant but not on others, in order to escape liability for infringement of the patent by such sales, defendant has the burden of showing that they were so equipped when originally sold by complainant, and, where it is shown that he changed the numbers on many of the machines, such burden is not sustained by the fact that the machines bearing such numbers when sold by complainant were so equipped.

   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 312.*]

2. PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE.
   The profits recoverable from an infringer of a patent for an attachment for a machine is not necessarily limited to the increased price of the machines sold by him having the attachment, but the difference in salability is to be considered, and, where it appears that sales would not have been made but for the infringing attachment, he is liable for the entire profit on such sales.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*

   Accounting by infringer for profits, see note to Brickill v. City of New York, 50 C. C. A. 8.]

In Equity. Suit by the Union Special Machine Company against Hyman Maimin. On exceptions to report of Lewis H. Van Dusen, Master. Overruled.

The following is the master's report:

To the Honorable the Judges of said Circuit Court:

This is a suit in equity brought for infringement of United States letters patent No. 493,461, dated March 14, 1893, to Russell G. Woodward, of Waukegan, assignor to the Union Special Sewing Machine Company, of Chicago, Ill., for a thread-controlling device for sewing machines.

On June 6, 1908, an interlocutory decree was entered adjudging said letters patent, set forth in the bill of complaint, good and valid and the title thereto to be in the complainant, the Union Special Machine Company, and the defendant was held to have infringed upon the first and second claims of said letters patent, which were the only claims in controversy. The decree also directed that the complainant recover from the defendant the profits, gains, and advantages which he has made by infringement of said letters patent since the 14th day of November, 1904, and also the damages which the complainant has sustained by reason of such infringement, since said last-mentioned date.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The case was referred to me, as master, to ascertain and state an account of said profits, gains, and advantages, and to assess and state the damages and report to the court. The decree also provided for the usual perpetual injunction and that the complainant recover its costs, charges, and disbursements.

Proceedings before the master under the decree and order of reference began July 6, 1908, and the case was submitted to him upon the final arguments of counsel on March 28, 1910. The testimony was taken down stenographically and the signatures waived by consent of counsel. Save the months of April and May, 1909, when by courtesy of counsel no meetings were fixed owing to the master's absence from the city, the proceedings were continued by the master as rapidly as the convenience of counsel would permit. Joseph C. Fraley, Esq., was of counsel for complainant, and Hector T. Fenton, Esq., counsel for defendant.

The witnesses called by the complainant on the accounting were the defendant; Richard E. Thompson, Jr., a traveling salesman of the complainant company; Chester McNeil, its secretary; Charles H. Crowell, the manager of its business in Philadelphia; and Louis O. Bouchard and Anselm Straub, both of whom were formerly in the employ of the defendant. Defendant offered no evidence. Both counsel gave notice that use of the original record in the case would be made before the master, pursuant to equity rule 80.

Under the interlocutory decree, the complainant is entitled to recover the profits which have accrued to the defendant, by reason of the infringement or, as an alternative, the damages which the complainant has sustained thereby. The complainant elected to recover the defendant's profits, as such; hence, as urged by complainant's counsel, the law of the proceeding is that which governs the ascertainment of profits and does not depend upon any of the decisions which relate to the question of complainant's damages.

The matter presents two questions:

(1) How many infringing sewing machines have been sold by the defendant during the period covered by the accounting, namely, from November 14, 1904, to June 8, 1908, i. e., the general question of infringement?

(2) Has the complainant met the burden of proof necessary to charge the defendant with a stated sum to be recovered, as and for the profits due to the infringement, i. e., the question as to the measure of recovery.

### 1. Infringement.

"The patent which the defendant is charged with infringing is for a thread-controlling device for sewing machines, designed to better regulate the feeding of the thread, and particularly to prevent its breaking when an extra thickness of material is encountered by reason of seams or otherwise." Archbald, District Judge.

An invention, as interpreted by the previous opinion of the Circuit Court (161 Fed. 748, affirmed [C. C. A.] 165 Fed. 440) and as is plainly evident from a reading of the patent, is not to be characterized as merely placing an intermediate eyelet (c) on the top of the movable arm of a sewing machine, but consists in attaching it at such a place that it shall operate to a certain end in a certain way.

"This arrangement is especially useful in double or twin needle machines for which the complainant formerly held a patent which has now expired * * * and has so commended itself to the public that the defendant feels called upon to see that his machines are equipped with it." Archbald, District Judge.

The allegation of the complainant is that a number of its machines, which were sold by defendant during the period covered by the accounting, did not contain the patented article when sold by it; that these machines did contain the patented article when defendant resold them; and that they were so rebuilt or repaired or restored by defendant as to constitute infringement whether or not they originally contained the patented improvement.

### Number of Infringing Machines.

In response to an order from the master on the defendant to bring with him any and all books of accounts, vouchers, documents, and records of his

business tending to show the number of sewing machines improved, repaired, or sold by him which embodied the arrangement of thread eyelets set forth in the patent in suit (Record, 2 and 15½), the defendant, at the meeting of March 5, 1909, produced a statement showing 38 machines sold by him during the period covered by the accounting. This statement marked "Transcript of Defendant's Sales Book" (R. 31), as appears from another copy of it, amended to show Ledger page, price, and purchases, placed in evidence (R. 55) at the next meeting, reads as follows:

Amended Transcript of Salesbook and Ledger.

(Record, p. 55) L. H. V D., Master, 3/8/09.

Transcript from Sales Book.

Nov. 14/'04 to June 8/'08.

(Amended to Show Ledger Page, Price, and Purchaser.)

| Ledger page. | Year | Page | Date | No. of Machine | Price. | Purchaser |
|---|---|---|---|---|---|---|
|  | 1904 | 199 | 11/25 | No. not stated | $70 ⎤ | Agreed |
|  |  | 207 | 12/2 | " " " | $70 ⎬ | 3/22/1910— |
|  |  | 221 | 12/31 | " " " | $70 ⎦ | L. H. V D. Master |
| 221 | 1905 | 5 | 1/10 | 38070 | $68. | Dailhenn Mfg. Co. |
| 224 |  | 7 | 1/14 | 17685 | $60. | Beiley Bros. |
| 231 |  | 17 | 1/31 | 17685 | $65. | Bowling Green Knitting Mills |
|  |  | 81 | 4/22 | No. not stated | $65. | Agreed 3/22/1910—L. H. V D. Master |
|  |  | 83 | 4/25 | 22761 |  |  |
|  |  | 107 | 5/24 | No. not stated | $65. | Agreed 3/22/1910—L. H. V D. Master |
| 222 |  | 107 | 5/26 | 34127. | $70. | Tuttleman Bros. & Fagen |
|  |  | 163 | 8/25 | 7738 |  |  |
|  |  | 173 | 8/25 | 7736 |  |  |
|  |  | 177 | 8/19 | 7739 |  |  |
|  |  | 185 | 9/4 | 7728 |  |  |
|  | 1906 | 11 | 1/16 | 7737 |  |  |
|  |  | 26 | 2/17 | 7719 |  |  |
|  |  | 27 | 2/22 | 7733 |  |  |
|  |  | 54 | 5/4 | 41392 |  |  |
| 273 |  | 57 | 5/12 | 14669 | $70. | Chas. F. North |
| 419 |  | 55 | 5/9 | 22750 | $65. | Florence Knitting Mills |
| 425 |  | 60 | 5/18 | 34127 | $70. | Natl. Underwear Co. |
|  |  | 64 | 5/25 | No. not stated | $65. | Agreed 3/22/1910—L. H. V D. Master |
| 503 |  | 118 | 10/4 | 34127 | $65. | S. Unger Est. |
|  |  | 122 | 10/11 | 22758 |  |  |
|  |  | 123 | 10/13 | 41384 |  |  |
|  |  | 140 | 11/3 | 38118 |  | Testimony p. 312-313 L. H. V D. 3/8/1910 Master |
| 321 |  | 142 | 11/1 | 20331 | $59. | Bedford Shoe Co. |
| 381 | 1906 | 122 | 10/11 | 22750 | $65. | Russell Mfg. Co. |
| 21 |  | 151 | 11/16 | 38070 | $55. | Oak Lane Knit. Mills |
| 534 |  | 153 | 11/21 | 34127 | $70. | Berkeley " " |
|  |  | 166 | 12/10 | 29501 |  |  |
| 51 |  | 166 | 12/10 | 14669 | $60. | Thos. F. Byrne |
|  |  | 172 | 12/18 | 23030 |  |  |
|  |  | 166 | 12/10 | 20962 |  |  |
| 153 | 1907 | 14 | 1/31 | 22750 | $60. | Union Knitting Mills |
| 153 |  | 24 | 2/15 | 20331 | $60. | Union Knitting Mills |
|  |  | 169 | 10/3 | 34019 |  |  |
|  | 1908 | 26 | 4/17 | 29501 |  |  |

At the same time, there was also produced by defendant a paper entitled "Duplicate Numbers of Machines" (attached to Record, p. 340), which shows the selling prices not indicated on the above-amended transcript to have been as follows:

| Date. | Number of Machine. | Selling Price. |
|-------|--------------------|----------------|
| 4/25/05 | 22761 | $65 |
| 8/25/05 | 7738 | 70 |
| 8/25/05 | 7736 | 70 |
| 8/19/05 | 7739 | 70 |
| 9/4/05 | 7728 | 70 |
| 11/16/06 | 7737 | 70 |
| 2/17/06 | 7719 | 60 |
| 2/22/06 | 7733 | 70 |
| 5/4/06 | 41392 | 60 |
| 10/11/06 | 22758 | 65 |
| 10/13/06 | 41384 | 65 |
| 11/3/06 | 38118 | 65 |
| 12/18/06 | 23030 | 70 |
| 12/10/06 | 20962 | 60 |
| 10/3/07 | 34019 | 65 |

Defendant admitted that all of the sales on "Transcript of Defendant's Sales Book" were of the patented article, that for the purpose of this account he was willing to have them considered "Twin Needle A" machines, and that all of them were sold by him as, and for, the complainant's machines. (R. 31, Q. 61; R. 50, 51, QQ. 158–163; R. 327, QQ. 814, 815.)

The defendant also produced certain of his order slips (R. 17, 23, 24, 25, 31) which related to the sales of the machines appearing on the transcript. On examination of these order slips, marked for identification, respectively, "Defendant's Order Slips November 14, 1904, to end of 1905" (R. 29), and "Defendant's Order Slips September 4, 1905, to July 7, 1908" (R. 31), the master finds the same to cover the items on the transcript with exception of machine No. 7738 sold on 8/25/05. The defendant when testifying as to some of these order slips stated that they referred to Twin Needle A Union Special Sewing Machines, which embodied the arrangements of thread eyelets set forth in the patent in suit. (R. 17, Q. 1; R. 23, Q. 33; R. 24, Q. 37; R. 25, Q. 41.)

The master is unable to agree with the argument of defendant's counsel to the effect that there is no proof that the machines contained on the "Transcript of Defendant's Sales Book" were of the patented article, because the term "Twin Needle A" machine was once equally applicable to a twin needle machine for which the complainant formerly held a patent, which expired in 1903, but, on the contrary, finds from the above evidence that defendant sold 38 machines (being those set forth on "Transcript of Defendant's Sales Book") embodying the patented improvement during period covered by the accounting as and for the complainant's genuine twin needle A machines.

Upon showing that defendant sold 38 machines embodying the patented device, it might be that complainant could have rested there, throwing the burden on the defendant to show a license, either expressed or implied, from the fact that these machines had originally been made and sold by complainant with the patented device. Watson et al. v. Smith et al. (C. C.) 7 Fed. 350; Searls v. Bouton et al. (C. C.) 12 Fed. 140; Armat Moving Picture Co. v. Edison Mfg. Co. (C. C.) 121 Fed. 559.

However that may be, the complainant traced through its records the numbers furnished by the defendant, assuming that the machines on the defendant's transcript bore the original numbers put on by complainant.

The result is to be found in the testimony of Chester McNeil, secretary of complainant company (R. 71–74) and the McNeil list (R. 89½ and 333) taken from and substituted by stipulation for the complainant's original records. This list offered in evidence, and marked "Complainant's Exhibit McNeil List" (R. 74), reads as follows:

The Union Special Machine Co.     U. S. C. C., E. D. of Pa.
v.     Oct. Sess. 1904.
Hyman Maimin.     No. 26. In Equity.

McNeil's List—Complainant's Exihibit.

L. H. V D. Master 3/8/09.

6 machines without number.

| With Patented Device. | | Not Having Patented Device. | |
| --- | --- | --- | --- |
| #38070. | | 34127. | Class 8600. |
| 17685. | | 34127. | Duplicate 1. |
| 17685. | Duplicate. | 34127. | Duplicate 2. |
| 22761. | | 20331. | Bosom Taping 4 Ga B. |
| 7738. | | 34127. | Duplicate 3. |
| 7736. | | 29501. | Air Cord B. |
| 7739. | | 20962. | B Shoe Cording. |
| 7728. | | 23030. | B 3 thread Vamping. |
| 7737. | | 20331. | Duplicate 1. |
| 7739. | | 34019. | B Air Cording. |
| 7733. | | 29501. | Duplicate 1. |
| 41392. | | | |
| 14669. | | | |
| 22750. | | | |
| 22758. | | | |
| 41384. | | | |
| 38118. | | | |
| 22750. | | | |
| 38070. | Duplicate 1. | | |
| 14669. | Duplicate 1. | | |
| 22750. | Duplicate 2. | | |

The master, at this point, makes certain findings of fact from the evidence in its entirety as same have a decided bearing upon the burden of proof as relating to the general question of infringement:

(1) The defendant never built a machine, infringing or otherwise. as a complete act so far as this accounting is concerned. (This is admitted by both counsel for complainant and defendant and is borne out by the evidence.)

(2) The defendant never sold any of the machines, set forth on his transcript of sales book (above mentioned) as though they were of his own manufacture, or of independent manufacture, but always as and for the complainant's genuine "Twin Needle A" machines (R. 50, Q. 158; R. 51, Q. 163; R. 327, RXQ. 814).

(3) A course of dealing on the part of defendant as follows: Buying up secondhand machines which he knew to be of the complainant's make, some of which did, while others did not, embody the patented improvement, he rebuilt or repaired or restored these machines to an apparently new condition by ripping them out and sometimes sending the parts to japanners that they might be put into lye or acid and thereafter rejapanned and renickeled. Complainant's brass medallion, or trade-mark, taken from other machines, broken too badly to repair, was placed on the reassembled machines, which, changed from one gauge to another and from one class to another and renumbered in the effort to make the new numbers correspond with complainant's regular class numbers for that particular type of machines, would look like new machines. Then defendant resold them specifically as complainant's own machines and under complainant's name. (R. 168 to 178, QQ. 1 to 61; R. 181 to 183, XQQ. 86 to 90; R. 193, XQQ. 160–162; R. 197, QQ. 183–186; R. 213–224, QQ. 1 to 67; R. 228, XQ. 85; R. 231–235, XQ. 100 to XQ. 133; R. 237, XQ. 143–144; R. 245, XQ. 190–192; R. 246, XQQ. 195 to 197; R. 247 to 249, XQ. 206 to 213.) This course of dealing is shown by the testimony of Louis O. Bouchard and Anselm Straub, witnesses on behalf of complainant, who were formerly employed by defendant in his machine shop; Bouchard, hired as a Union Special hand, for seven or eight months in 1906 (R. 169, 170);

and Straub, foreman and machinist for nearly six years, prior to June, 1908 (R. 213).

(4) The numbers of complainant's machines were not duplicated by it; each machine made and sold by it since 1884 having had a consecutive number (Testimony of Chester McNeil infra, R. 71 to 73, QQ. 1 to 13; R. 79, XQ. 55.)

(5) Since a period dating back at least to 1891, all machines sold by complainant as "Twin Needle A" machines have been equipped with the thread-controlling device of the patent in suit. (This finding is made at the request of both counsel for complainant and counsel for defendant [R. 337–339] and upon the evidence.)

The nearest approach to the present situation in any of the cases cited by either counsel or otherwise examined by the master is to be found in National Phonograph Co. v. Fletcher (C. C.) 117 Fed. 149 (1902) though in none of the cases, so far as the master has been able to discover, is there found the exact situation of this case. The peculiarity of the situation is thus stated by complainant's counsel, and in the opinion of the master correctly stated:

"In ordinary infringement cases, the defendant has built an infringing machine, as a complete act, or has used or sold a machine, built by some person other than the patentee. In such cases, the actual cost of the machine to the builder, or to the user or seller, is ordinarily definitely ascertainable from book entries which show the figures, or may be established by proof of the reasonable cost of the labor and materials. In another class of cases the question of repairs to machines originally sold by the patentee, but still in the hands of the user, has been the subject of judicial consideration, and various principles have been laid down as to the extent to which repairs are permissible, in order that the user may continue to enjoy that which was reasonably contemplated by the act of sale on the part of the patentee. * * * In none, however, are there found the very peculiar circumstances of the case at bar. The defendant never built a machine, infringing or otherwise, as a complete act, and his accounts, therefore, cannot show the reasonable cost of building machines even by way of estimate. Moreover, he has never sold the infringing machines, as though they were of his own manufacture, or of independent manufacture, but always as and for the complainant's genuine machines."

In Phonograph Co. v. Fletcher, supra, the court decided that the modification of apparatus purchased outright from a patentee was an infringement of the patent, and, inter alia, said (pages 153 and 154, 117 Fed.):

"* * * The defendant claims the right to gather up all of the complainant's output, recast the same, subtract what he will, add his own parts, good or bad, and put afloat again as the patented product, simply because he uses some of the original parts, each in itself unchanged. * * * The whole suggestion seems vicious and unconscionable. * * * What a man may do for his own use, with property made pursuant to a patent, is not what he may do for the purpose of selling as another's patented article."

In that case the defendant converted machines originally bought from the patentee by adding thereto something of his own invention. In this case the defendant has not added anything of his own, but in the conversion, or altering, of machines, has piratically added that which was the property of the complainant.

The McNeil list covers 32 machines out of the 38 on the transcript. The remaining 6 machines are not indicated by number on the transcript and do not appear on the McNeil list. The left-hand column of the McNeil list contains the numbers of machines which, as sold by the complainant, embodied the patented device; the right-hand column those which, as sold by complainant, did not embody it.

The machines appearing on defendant's transcript are divisible for a proper consideration of same into:

Class A. The 11 machines whose numbers are found in right-hand column of McNeil list, to wit: Nos. 34127 (duplicated three times), 20331 (duplicated), 29501 (duplicated), 20962, 23030, and 34019.

Class B. The six machines not indicated by number on the transcript and which do not appear on McNeil list.

Class C. The five machines mentioned in left-hand column of McNeil's list, having duplicated numbers, to wit: Nos. 38070, 17685, 14669 (each once duplicated) and No. 22750 (twice duplicated).

Class D. The 16 machines (without duplicates) whose numbers are found in the left-hand column of McNeil's list, to wit: Nos. 38070, 17685, 22761, 7738, 7736, 7739, 7728, 7737, 7719, 7733, 41392, 14669, 22750, 22758, 41384, 38118.

Class A. The 11 machines whose numbers (appearing above) are found in the right-hand column of McNeil list.

The evidence (supra) is that these machines did not embody the patented improvement when they left the complainant's hands, and that they did embody it when sold by the defendant. Under the previous opinion of the Circuit Court (affirmed C. C. A.) in this cause, infringement has been clearly established as to these 11 machines. This finding is in accordance with the principle laid down in Railroad v. Mellon, 104 U. S. 112, 26 L. Ed. 639, and the other cases relied on by defendant's counsel (Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103, and Vance v. Campbell, 1 Black, 427, 17 L. Ed. 168), to wit, that infringement must be shown by satisfactory proof and cannot be presumed. Defendant's counsel contended that machines bearing numbers 29501 (duplicated), 20962, and 34019 should be eliminated because the McNeil list shows that the genuine machines bearing those numbers when originally sold by complainant were "Corders," and it was admitted by complainant that the conversion of "Corders" into infringing machines was exceedingly improbable. This contention must fail in view of defendant's admission that all the sales on his transcript were of the patented article, and his book entries, relating to these four machines, which show that a machine numbered 29501 was twice sold by him as a "Usp. Twin Needle Lace" machine (1906 Sales Book, p. 166, and 1908 Sales Book, p. 26), the machine numbered 20962 as a "Usp. Twin Needle Lace" machine (1906 Sales Book, p. 166), and the machine numbered 34019 as a "Usp. Covering" machine (1907 Sales Book, p. 169). The amount received by defendant from the sale of these 11 machines, as stated by himself on his transcript and order slips, is $719.

Class B. The six machines not indicated by number on the transcript and which do not appear on McNeil list.

The complainant's proofs having affirmatively disclosed infringement as to sales of the 11 machines in Class A (supra), the defendant, to the extent of the transactions covered by this accounting, is a willful infringer, being in the position of one who continues to infringe with knowledge that he is being sued for it and liable to be called upon to exhibit his books and render an account. The manner in which the books of the defendant were kept enabled him to refer to but five instances, out of all the machines covered by the transcript, where numbers appearing upon the transcript appeared upon machines when originally bought by him (R. 129, 130, Answer to Q. 373) and made it impossible to ascertain the initial cost of the machines appearing on the transcript except in two instances, namely, Nos. 38070 and 38118 (R. 311). As was said in Rubber Co. v. Goodyear, 9 Wall. 788, 803, 19 L. Ed. 566:

"The conduct of the defendants in this respect has not been such as to commend them to the favor of a court of equity."

Under such circumstances and in view of the above findings of fact, every doubt and difficulty must be resolved against the defendant. Rubber Co. v. Goodyear, supra; Rose v. Hirsh et al., 94 Fed. 177, 36 C. C. A. 132, 51 L. R. A. 801; Regina Music Box Co. v. Otto et al. (C. C.) 114 Fed. 505; Creamer v. Bowers et al. (C. C.) 35 Fed. 206.

The master is of the opinion that the burden was upon the defendant to show the original condition of these six machines not indicated by number or at least their condition at the time they came into his hands. This he did not do, and he alone could do it. The complainant proved that these six machines (being of the 38 on the transcript), as sold by the defendant, embodied the patented improvement, and were sold by the defendant as and for complainant's genuine "Twin Needle A" machines. Not having their numbers, and it was within defendant's power alone to supply these numbers, the complainant could not show their original condition. This is especially true in view of the manner in which the defendant conducted his business (see supra).

The master, therefore, finds that infringement has been established as to these six machines, the selling price of which, received by the defendant, was upon the understanding reached at the oral argument ($70 each for the first three and $65 each for the last three) $405.

Class C. The five machines mentioned in left-hand column of McNeil list, having duplicated numbers, to wit: Nos. 38070, 17685, 14669 (each once duplicated) and No. 22750 (twice duplicated).

Complainant based his allegation of the nongenuineness of these machines on the fact, inter alia, that they bore duplicated numbers, and that numbers of the complainant's machines were not duplicated by it. Defendant, on the other hand, alleged that these were in fact resales by him of the same machines. As argued by counsel for complainant, only one of two conclusions is possible, namely, either the transaction constituted resales of the same machine, or the number was duplicated in defendant's factory. Chester McNeil, secretary of and formerly assistant to the president of complainant company and connected with it for a period of 23 years, a witness on behalf of complainant, testified that each machine made and sold by complainant company had a consecutive number, stamped upon its bed casting or frame and for ready means of distinction upon a sliding plate attached to the machine: that this system of numbering had been continuous since 1884; that these numbers have never been duplicated nor repeated, save in one instance, when, about 15 years ago, a large number of machines were entirely destroyed at a fire which burned down the Boston office of complainant company, and that complainant had only sold one machine each having Nos. 38070, 17685, 14669, and 22750, respectively (R. 71 to 73, QQ. 1 to 13; R. 79, XQ. 55).

The defendant, being a willful infringer and having sold these machines embodying the patented device as and for complainant's genuine "Twin Needle A" machines, was, in the opinion of the master, bound to show that these transactions constituted resales in view of this positive and uncontradicted evidence that numbers of complainant's machines were not duplicated by it, and the evidence of Bouchard (R. 173–175, QQ. 38 to 42, inc.; R. 177, 178, QQ. 55 to 61, inc.; R. 193, XQQ. 160 to 162, inc.; R. 197, QQ. 183 to 186, inc.) and Straub (R. 214–223, QQ. 9 to 61, inc.; R. 228, XQ. 85; R. 231, XQQ. 100 to 105, inc.; R. 246, XQQ. 195 to 197, inc.; R. 247–249, XQQ. 206 to 213, inc.) as to the manner in which defendant's machines were renumbered and as to the actual fact of duplications of the same number.

The defendant's testimony (Answer to A. 194, R. 60) and the entries in his 1906 Ledger, pages 73 and 51, and 1906 Salesbook, pages 57 and 166, would seem to show that machine No. 14669 was originally sold by defendant to Charles F. North on May 12, 1906, returned by him on May 25, 1906, and resold to Thomas F. Byrne on December 10, 1906.

There is, however, nothing in the defendant's books nor in his testimony (R. 55–62, QQ. 174–203) to show a resale of machines 38070, 17685, and 22750.

As to machine numbered 38070, defendant testified that he sold this machine to the Delheim Manufacturing Company on January 10, 1905 (1905 Salesbook, p. 5). The entries under the Delheim Manufacturing Company in his 1905 and 1906 Ledgers at pages 221 and 396, respectively, or in his other books for these years, fail to show that any machines whatsoever were returned by that company to the defendant during those years, while the entries in defendant's 1906 Salesbook, p. 151, and 1906 Ledger, p. 21, disclose that defendant sold "1 usp. Covering 38070" to the Oak Lane Knitting Mills on November 16, 1906. Nor does the entry in 1906 Ledger, p. 21, "Credited by Merchandise $40," refer to machine No. 38070 as would appear from defendant's testimony (R. 55 and 56, QQ. 175–177), but said entry refers to "1 Dewees Trimmer 3328 and 1 usp. 1 n Long 23128" returned by Oak Lane Knitting Mills as appears by defendant's 1906 Purchase Book, pp. 92 and 93, posted to 1906 Ledger, p. 21.

As to machine numbered 17685, defendant testified that the entries appearing in his 1905 Ledger, p. 224, his 1905 Salesbook, p. 7, and 1905 Daybook, p. 4, satisfied him that the machine returned by Beiley Bros. on January 30, 1905, was the machine which he sold them on January 14, 1905 (R. 60, 61, QQ. 194–196). An examination of the Beiley Bros. (74 Grand street, New York) account in the above books shows that the defendant sold them three

of complainant's machines, to wit. "1 usp. Sleever 4 1/2—$68, 1 usp. fancy Stitch & Hemmer $60," on January 14. 1905, and "1 usp. Air Corder $68" on January 16, 1905, and that on January 30, 1905, one was returned designated in defendant's 1905 Daybook as "usp. Cov. flat—No. 17685." By entry on page 17 of the Salesbook, it appears that "1 usp. lace 12G, No. 17685," was sold on January 31st to Bowling Green Knitting Mills, Bowling Green, S. C., at $65. There is nothing in defendant's books to show the numbers of the three machines sold to Beiley Bros. His order slip dated 1/10/05 relative to the two machines sold on January 14th designates the "Sleever" as No. 32116 and the "fancy stitch and hemmer" as No. 17685. No order slip was produced for the Air Corder. According to defendant's testimony. (R. 129, 130, Q. 373) and his 1904 Purchase Book, p. 210, machine No. 17685 was originally purchased by him from H. Smith on December 27, 1904, as "1 usp. flat cov. 17685." The master is unable to say whether complainant's flat covering machine No. 17685 purchased by defendant on December 27, 1904, and shown by his testimony, books, and order slip (supra) to have been sold as a Union Special fancy stitch and hemmer to Beiley Bros., New York City, on January 14, 1905, is the same machine which Beiley Bros. are credited with having returned on January 30, 1905, and which appears from defendant's account to have been resold as a Union Special lace machine on January 31, 1905, to Bowling Green Knitting Mills, Bowling Green, S. C.

As to machine No. 22750, there is no testimony of the defendant as to the alleged resales of this machine, the number of which is twice duplicated on the transcript. On the question of the original purchase by him of any machine bearing this number his testimony discloses the fact that No. 22750 does not appear on his Purchase Book as having been on the machine in question of the complainant's make purchased by him (R. 129-131, RDQQ. 372-376). Defendant's 1906 Sales Book, p. 55, shows that he sold "1 U. Sp. Flat Bed Cov. 12 gauge #22750 at $65" on May 9, 1906, to Florence Knitting Mills, Lehigh Ave. & Master, and the entries in his 1906 Purchase Book, p. 26, and 1906 Ledger, p. 419, under Florence Knitting Mills, show that this machine was not returned to him during 1906. The same Sales Book, p. 122, shows that he sold "2 U. Sp. twin needle Lace" "Nos. 22758, 22750" at $130 on October 11, 1906, to the Russell Manufacturing Company, Alexander City, Ala., and the entries in the above Ledger, p. 381, under Russell Manufacturing Company, show credits by check and that no machines whatsoever were returned by that company to the defendant during 1906. From defendant's 1907 Ledger it would appear that defendant did not have an account with the Russell Manufacturing Company during 1907. Nevertheless, a machine numbered 22750 was again sold by defendant on January 31, 1907, to Union Knitting Mills, Schuylkill Haven, Pa., as "1 Usp. twin needle Cov. A. 22750" at $60 as appears by defendant's 1907 Sales Book, p. 14. Defendant's 1907 Ledger, p. 153, under Union Knitting Mills account, shows credit by check and no machines returned. The conclusion is irresistible that the sales of machines numbered 22750 to the Russell Manufacturing Company, Alexander City, Ala., on October 11, 1906, and to the Union Knitting Mills, Schuylkill Haven, Pa., on January 31. 1907, did not constitute resales of the machine bearing a like number which was sold to Florence Knitting Mills on May 9, 1906.

From the above evidence it is clear that the defendant has failed to show that the transactions relating to sales of machines having duplicated numbers 38070, 17685, and 22750 constituted resales as alleged, and, in view of the manner in which he conducted his business, the only possible conclusion is that the numbers were duplicated in defendant's factory. The burden was, therefore, upon him to show the original condition of these machines, or at least their condition at the time they came into his hands. This he has not done. The master, for these reasons as well as for the reasons given above with respect to the six machines not indicated by number, finds that infringement has been established as to these four machines having duplicated numbers 38070, 17685 (each duplicated once) and 22750 (duplicated twice), which four machines (being of the 38 on the transcript), as sold by the defendant, embodied the patented improvement, and were sold by the defendant as and for complainant's genuine "Twin Needle A" machines. The amount received

by defendant from the sale of these machines. as stated by himself on his transcript and as appears from his books, is $245.

Class D. The 16 machines (without duplicates) whose numbers are found in the left-hand column of McNeil's list, to wit: Nos. 38070, 17685, 22761, 7738, 7736, 7739, 7728, 7737, 7719, 7733, 41392, 14669, 22750, 22758, 41384, 38118.

These 16 machines appear to have originally embodied the patented improvement inasmuch as the testimony of McNeil and the McNeil list show that twin needle A machines equipped with the patented device in controversy were made and sold by complainant bearing numbers similar to the numbers stated by the defendant to have been on these machines when sold by him. (R. 73, 74, Q. 15; R. 79, XQ. 55.) Complainant's counsel argued, however, that in view of the overwhelming evidence that the numbers were changed in the defendant's shop. systematically (evidence of this supra) and for a definite purpose (R. 228, XQ. 85), Mr. McNeil's reference to the original numbers should not be considered as conclusively showing that the machines were really those which the numbers on the transcript indicated, but merely as bearing on the proposition that the defendant did not repair machines, in the ordinary sense of making lawful repairs, but rebuilt machines and converted them from one class into another, as shown by the duplicating and noncorrespondence of numbers, thus initiating an infringement, instead of merely continuing the lawful use of a patented article. There is much force in this argument; especially when we analyze the evidence of Bouchard and Straub relating to the way in which defendant conducted his business (supra), the evidence relating to the alleged resales of the machines numbered (duplicated) 38070, 17685, and 22750 in left-hand column of McNeil's list (supra), and such instances as machine numbered 22758 which, according to defendant's amended transcript of sales, order slip of 10/10/06, and 1906 Sales Book, p. 122 (supra), was sold by him to the Russell Manufacturing Company, Alexandria City, Ala. The genuine Union Special Machine bearing that number was found in Galt, Ontario, Canada (R. 120–123, Testimony of R. E. Thompson, Jr.). Counsel for complainant calls attention to the significant fact (already referred to) that, out of all the machines covered by the transcript, the defendant has only been able to refer to five instances where numbers appearing upon the transcript are alleged to have appeared upon machines when originally bought by him (to wit, Nos. 34127, 17685, 38070, 38118, 41384), and that in three out of these five instances repetition of the numbers appear in the Transcript of Sales (R. 129, 130, Q. 373); No. 34127 appearing four times and Nos. 17685 and 38070 twice each. The evidence relating to resales of No. 17685 and No. 38070 has already been referred to at length. The evidence fails to show the alleged resales of No. 34127 (R. 58–60, QQ. 187-193). On examining the order slips produced, the master finds on order slip of May 21, 1906, "1 Usp. twin needle style A 34127—$60" to M. Starrell, rear 218 Arch St.—S. B. 64, and 1906 Salesbook, p. 64, shows sale of this machine to Morris Starrels on May 25, 1906.

This sale is in addition to four sales of No. 34127 mentioned on transcript and though, by order slip of May 17, 1906, and defendant's 1906 Salesbook, p. 60, and defendant's transcript, it would appear that this machine was shipped on May 18, 1906, to National Underwear Company, Spring City, Pa. In the words of complainant's counsel:

"It is beyond the bounds of reasonable probability that these particular machines should have undergone the remarkable experience of resale."

But whether these 16 machines when resold by defendant did or did not retain their original numbers the master is of the opinion that under the evidence in the cause the burden of proof was upon the defendant to show the lawfulness of his acts in regard to them. To hold otherwise in view of the manner in which defendant conducted his business and in the face of the admitted fact that as sold by him these machines embodied the patented device would be contrary to the spirit of the law, as expressed in the decisions that a part that gives sole patentability (such as the intermediate eyelet [c] attached as it is in the patent in suit), to the combination may not even be replaced by a purchaser without the patentee's consent. Morrin v. Engineering Works (C. C.) 138 Fed. 68 (especially page 81). Nor can the defendant be

185 F.—9

presumed to have the patentee's consent to use the patented combination or any part thereof.

"What a man may do for his own use. with property made pursuant to a patent, is not what he may do for the purpose of selling as another's patented article." National Phonograph Co. v. Fletcher, supra.

In the opinion of the master complainant's counsel correctly defines the situation when he says that, the moment these machines passed "into the hands of a person whose business was conducted upon the piratical principles of this defendant, the case becomes one where the doubt, if any exists, should be resolved against him. Knowing that he was liable to be called upon to account for these 16 machines, it was his duty to preserve the evidence of such acts as he performed in regard to them, and to satisfy the master that, in rebuilding or repairing these machines. he did nothing more than the repairing of patented articles, as distinguished from the renewal of essential parts thereof or the reconstruction of complete machines from fragments of old ones."

This he has not done, and he has further failed to satisfy the master that any of these 16 machines, when resold by him, retained their original numbers save those 4 bearing the numbers which appear from his, testimony and books (R. 129, 130, Q. 373) to have been on machines when originally bought by him, i. e., he has failed to satisfy the master that they were machines that originally embodied the patented improvement.

The defendant having admitted that these 16 machines (being of the 38 on the transcript) as sold by him embodied the patented device and were sold as and for complainant's genuine "Twin Needle A" machines, the master, for the reasons above given. finds that infringement has been established as to them. The amount received by defendant from the sale of these machines, as stated by himself on his transcripts and as appears from his books, is $1,053.

Recapitulating, the master finds that infringement has been established as to all the 38 machines appearing on "Transcript of Defendant's Salesbook," and that the amount received by defendant from the sale of these machines as stated by himself is $2,422, as follows:

Class A................................................. $ 719
Class B.................................................    405
Class C.................................................    245
Class D (exclusive of $70 received from original sale of
    machine No. 14669, returned and credit given original.
    purchaser) .......................................  1,053
                                                      ------- $2,422

## 2. Measure of Recovery.

Counsel for defendant contended that, even if the master should hold that the proofs submitted by complainant disclosed infringement chargeable to defendant subsequent to the filing of the bill, there could be no substantial recovery in excess of nominal damages because complainant failed to prove what part of the profit was due to the patent in suit as distinguished from the part of the profit attributable to the machine itself without the patented feature, while counsel for complainant contended for all of the profits on the ground that the presence of the feature covered by the patent in suit was essential to the identity of the machine, and the mechanical importance of that feature, considered by itself, was wholly secondary to its function as a mark of entire identity, and that the infringing sales by defendant were attributable to the presence of the patented feature as an element of identity.

Many cases were cited by both counsel, but since the complainant has elected to recover the defendant's profits, as stated by complainant's counsel and hereinbefore mentioned, the law of this accounting is that which governs the ascertainment of such profits and does not depend upon any of the decisions (e. g., Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024) which relate to the question of complainant's damages. Defendant cited Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000 (1877); Manufacturing Co. v. Cowing, 105 U. S. 253; 26 L. Ed. 987 (1881); Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. 291, 28 L. Ed. 371 (1884); Black v. Thorne, 111 U. S. 122, 4

Sup. Ct. 326, 28 L. Ed. 372 (1884); and Dobson v. Carpet Co., 114 U. S. 439, 5 Sup. Ct. 945, 29 L. Ed. 177 (1885)—among other cases. Complainant referred to Wales v. Waterbury Mfg. Co., 101 Fed. 126, 41 C. C. A. 250 (1900); Brennan & Co. v. Dowagiac Mfg. Co., 162 Fed. 472, 89 C. C. A. 392 (1908); Orr & Lockett Hardware Co. v. Murray, 163 Fed. 54, 89 C. C. A. 492 (1908); and Yesbera v. Hardesty Mfg. Co., 166 Fed. 120, 92 C. C. A. 46 (1908)—as showing the present consensus of judicial opinion as to the quantum of proof.

In all these cases, where profits were derived from sales, the patented articles were offered for sale and purchased as and for those of the defendant, and the mechanical importance of the infringing part was, therefore, the factor whose effect upon salability was vital. The purchaser wanted the patented articles, not because they were supposed to be of the complainant's own make, but because they embodied mechanical combinations useful in themselves, entirely irrespective of origin. Whereas, in the case at bar the patented articles were intentionally sold by defendant as and for genuine machines of the complainant's make and were of the usual kind known to the trade as "Twin Needle A" machines, and it was to this, according to complainant's counsel's contention, that the salability of the machines in question was wholly attributable.

Charles H. Crowell, manager of complainant's business in Philadelphia, testified that for twenty-one years prior to January last he had made himself acquainted with the general habits of the trade and the nature of its demands; that millowners, manufacturers, and the trade in general were so familiar with the appearance of complainant's machines and the embodiment of their adjunctive parts, such as thread controllers, etc., that they very frequently ordered them by their class numbers; that a purchaser who wanted a twin needle machine of complainant's make wanted that machine, and "no other make or no other kind will answer the purpose"; that so far as he knew from his 21 years' experience the twin needle A machine was the only machine out of the 20 or more styles and types of machines of complainant's make that contains the thread-controlling device of the patent in suit; and that a demand for such a machine cannot be filled by any other machine of complainant's make or of other peoples' make. (R. 198–200, QQ. 1–11; R. 203, XQQ. 28–30; R. 204, 205, XQQ. 37–45. Also testimony of McNeil, R. 79–82, XQQ. 61–79; R. 88, RDQ. 125.)

It is very clear from Crowell and McNeil's testimony, as well as from other evidence in the cause, that the trade, which included customers both of the complainant and of the defendant, considered the thread-controlling device of the patent in suit, of which stitch-forming elements of an expired patent are parts, was required to adapt sewing machines to the particular work for which the complainant's "Twin Needle A" machines were used. And it is further evident that there was no way open to the defendant of supplying the demand for that use, to wit, sewing lace on knit underwear, ornamental stitching on shoes and skirts, etc., save by complainant's "Twin Needle A" machines. Under such facts a complainant is entitled to recover all of the profits, for, as said in Manufacturing Co. v. Cowing, supra:

"If the improvement is required to adapt the machine to a particular use, and there is no other way open to the public of supplying the demand for that use, then it is clear that the infringer has by his infringement secured the advantage of a market he would not otherwise have had, and that the fruits of this advantage are the entire profits he has made in that market."

But there are other reasons why the complainant in this cause should recover all the profits. The master finds as a fact that:

Sixth Finding of Fact. The thread-controlling device of the patent in suit was, during all the period covered by the infringement and for many years prior thereto, essential to the identity of the complainant's "Twin Needle A" machine.

Seventh Finding of Fact. The trade knew the various characteristics of machines of complainant's make, and when purchasers wanted a "Twin Needle A" machine of complainant's make "it was (to use the language of Elizabeth v. Pavement Co., supra) this thing, and not another, that the people wanted and required."

Owing to the trade's familiarity with the various characteristics of the complainant's machines, it seems to the master reasonably certain that, but

for the presence of the patented feature upon the machines known as "Twin Needle A" machines, the defendant would not have been able to sell these machines as and for complainant's; i. e., Union Special Machines, because, as stated by complainant's counsel:

"Irrespective of the mechanical value of the appliance, its absence would have destroyed the identity of the goods and enabled the purchaser to see that they were not what they professed to be."

The conclusion that the sale of the machines in question by the defendant is reasonably attributable to the presence of the patented feature as an element of identity is not affected by those findings of fact requested by defendant's counsel which the master affirms at the end of his report, nor by reason of the arguments based thereon. It is sufficient to say that, inasmuch as the complainant is not claiming the profits lost by it, but those made by the defendant, it is not material to this issue that complainant sold about 200 machines during a period four or five years prior to 1891, before the expiration of the original patent upon the stitch-forming mechanism, where no thread-controlling device was used, for the same price that its machines equipped with the patented device are now sold by it. (R. 86, 87, XQQ. 112–120; R. 82, XQQ. 80–82.) In this connection the master rules that evidence of the price of complainant's single needle machines, objected to by defendant's counsel, but admitted at the time with a reservation of ruling (R. 88 and 208), is irrelevant. As was said at page 478 of 162 Fed., page 398 of 89 C. C. A., in Brennan & Co. v. Dowagiac Mfg. Co., supra:

"What the plaintiff was seeking, and what the master was trying to find out, was the actual profits on the particular drills (machines) which contained the plaintiff's invention and which were made and sold by the defendant. What other drills (machines) the defendant made or sold, or what other drills (machines) were sold of other makes by other parties, was a wholly irrelevant matter." (Parentheses the master's.)

This same ruling applies to the answer to the master Q. 71 (R. 210) relative to the price at which B machines sold, which answer is hereby stricken out.

Nor is the conclusion that the sale of the machines in question by the defendant is reasonably attributable to the presence of the patented feature as an element of identity impaired by the fact that "Twin Needle A" machines contained the subject-matter of an expired patent. The decisions cited by both counsel (supra from Elizabeth v. Pavement Co., decided in 1877, to Yesbera v. Hardesty Mfg. Co., decided in 1908) upon the question of the proper method of determining the profits which may be recovered on account of the infringement of a patent, as well as such cases as Hurlbut v. Schillinger, 130 U. S. 456, 9 Sup. Ct. 584, 32 L. Ed. 1011 (1889), Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U. S. 441, 12 Sup. Ct. 49, 35 L. Ed. 809 (1891), and Dowagiac Mfg. Co. v. Superior Drill Co., 162 Fed. 479, 89 C. C. A. 399 (1908), support, in the opinion of the master, the rule laid down in Canda Bros. v. Michigan Malleable Iron Co., 152 Fed. 178, 81 C. C. A. 420 (1907), namely: That, when some element or elements found in a former patent are alleged to be also in the infringing article and to have contributed to the profits, the burden of proof is on the defendant of showing the presence of the extraneous element and the probability that it has affected the price of the infringing article. This the defendant has not done.

As previously stated in this report, the patent in suit is not for a mere addition. The claims are for combinations, of which the stitch-forming elements of an old patent are parts.

"A union of old parts, or a combination of old machines, is as truly a new machine, provided the rule of action be new, as if all the parts or elements were previously unknown." Robinson on Patents, § 177, p. 262.

The fact that machines not embodying the combination, as a whole, had fallen into the public domain through the expiration of a prior patent, conferred no right upon the seller to utilize those parts to form the new combination and thereby induce the sale of the machine as and for the genuine product of the complainant. 117 Fed. 149, supra. It may be that during the life of the prior patent, had the defendant used its stitch-forming elements and the thread-controlling device of the patent in suit, the profits would have had to be apportioned.

"When some other invention is employed and contributes to the profits, the infringer is liable to that party also, and he is entitled to be guarded against being compelled to pay two different parties for the same thing; but that difficulty does not arise when only things open to the public use are used in the patented combination." P. P. Mast & Co. v. Superior Drill Co., 154 Fed. 55, 83 C. C. A. 157 (1907).

The machines not embodying the combination in suit, as a whole, have fallen into the public domain and gone into common use and do not necessarily contribute anything to the salable value because of their original patented character. To quote Archbald, District Judge:

"It is like a hundred other things which have originated in the same way, and now have a standing in the market only by reason of some new and special feature added to them." Coddington v. Propfe (C. C.) 112 Fed. 1017 (1902).

The master finds that the sale of the infringing machines by the defendant is reasonably attributable to the presence of the thread-controlling device of the patent in suit as an element of identity, and that the complainant is entitled to a decree for the whole profits realized by the defendant, upon the ground that, within the rule laid down by the Supreme Court, upon the proofs submitted, the prima facie presumption is that the infringing sales would not have been made but for the presence of the patented device in suit.

### Defendant's Profits.

As previously stated in this report, the manner in which defendant's books were kept made it impossible to ascertain the initial cost of infringing machines except in two instances, namely, Nos. 38070 and 38118 (R. 311, 312, RXQ. 752-759). These were purchased for $40 each (R. 311, RXQ. 753). Counsel for defendant in his brief refers to $35 as a low average purchase price, while from the transcript from defendant's Purchase Books (R. 310 and ————) Union Special machines appear to have been bought by defendant as low as $15, and when bought in a lot with machines of other makes the average purchase price per machine appears to have been as low as $5.56 (R. 304, Q. 724).

Defendant accepted as a proper figure in arriving at the cost of repairs the sum of $9 per machine (R. 316, RXQ. 775). He also spoke of certain other items of expense and of his willingness to admit a profit of 10 per cent., but his testimony failed to show the amount of such items or to justify his estimate of the profits (R. 317-324, RXQ. 776-804). Defendant repaired machines covered and not covered by the patent in suit. No separate account was kept of their cost and profit. The business as to both was intermingled and confused. The infringement was not accidental. Under such circumstances, the burden was on the defendant to show the amount of all credits claimed for items of expense. Rubber Co. v. Goodyear, Yesbera v. Hardesty Mfg. Co., Dowagiac Mfg. Co. v. Drill Co., Brennan & Co. v. Dowagiac Mfg. Co., supra. In the absence of any other evidence, $9 must be taken as the total cost to defendant of repairing or rebuilding a machine.

Counsel for complainant contended that machines Nos. 38070 and 38118 should be taken as typical instances representing profits, and that the whole profit on the various infringing machines should be measured from these two specific instances and should be that found to actually have existed in these two instances. He says: "If, therefore, we are to take the machines Nos. 38070 and 38118 as typical instances representing the profit, we find that they each cost the defendant $40, and that they were respectively sold at $68 and $65 (see page 316). If we take the average of this ($66.50) the profit would be $17.50, which would be over 35 per cent."—and then claims 35 per cent. on the total amount received from sales as complainant's profit.

The master holds that such is not the course to pursue both because 35 per cent. represents a purchase profit, whereas a sales profit, in this instance .2631 per cent., should be used when figuring on amounts received from sales, and because the profits can be estimated with a greater degree of probability in another way. However, in view of the defendant's failure to produce the most satisfactory evidence, the master is compelled to rely on the less definite and certain evidence which the record supplies, and is of the opinion that machines Nos. 38070 and 38118 should be taken as typical instances rep-

resenting purchase price. While $35, the amount referred to by defendant's counsel as a low average purchase price, would be fair to the defendant, nevertheless, the master fixes upon $40 as a safe minimum. The defendant cannot complain, and the complainant ought not, as machines Nos. 38070 and 38118 were suggested by it as typical instances.

Taking $40 as an average purchase price and $9 as cost of repair or rebuilding, we have:

Amount actually received by defendant from sale of the 38 infringing machines (supra)...................................... $2,422
Cost to defendant—38 machines at $49 per machine............. 1,862

Profits .........:........................................... $ 560

### Costs of the Reference.

In this connection the master reports at the request of defendant's counsel:

(1) That the investigation before him covered 336 pages of testimony taken at 16 sessions.

(2) That the amended transcript of defendant's sales was submitted at the fifth meeting and noted, as in evidence, on page 55 of the minutes.

(3) That McNeil's testimony for complainant, including the "Exhibit McNeil List," was given at the fifth meeting, concluding with page 89 of the minutes.

Defendant's counsel argued as a sequence from the above that the costs should be put upon the complainant or, at least, apportioned, contending that the whole amount of complainant's ultimate claim could have been made, so far as it is based on any proofs, at the end of the fifth meeting and eighty-ninth page of the testimony. The master cannot agree with this contention and, on the contrary, is of the opinion that the length of the proceedings before him was due to the conduct of the defendant in his persistent refusal or neglect to furnish information called for, which was the cause of extra meetings and led, as stated by complainant's counsel in his brief, to an inordinately long examination. By the order of reference, the defendant was directed to cause the production of his books, vouchers, and documents for examination before the master and to attend for such purpose before the master from time to time as the master should direct. Upon the opening of the proceedings before him, the master, on motion of counsel for the complainant, ordered the defendant to produce certain of his books and papers in accordance with the court's order. At the second meeting held July 17, 1908, the defendant, under advice of counsel, declined to comply with the master's order to produce his books of accounts, etc., and it was necessary to certify these proceedings to the Circuit Court to compel obedience to the order issued (R. 13 and 14; R. 16 and 17). At the fourth meeting held March 5, 1909, it became necessary for complainant's counsel to suspend his examination of the defendant owing to the absence of certain of defendant's books (R. 49). Further, it was not until the seventh meeting, held March 19, 1909, that defendant produced certain of his purchase books (R. 124), nor until the fifteenth meeting, held February 8, 1910, that any information relative to the cost to defendant of any of the machines on his transcript of sales was forthcoming (R. 311). The record of the proceedings before the master shows a long and weary probing to elicit from the defendant the information necessary for the master to make a right and just report upon the subject of the reference. The master's conclusion that the costs of the reference should be put upon the defendant is not inconsistent with Garretson v. Clark, supra, Dobson v. Carpet Co., supra, Hill v. Smith (C. C.) 32 Fed. 753, and the other cases cited by defendant on this branch of the case.

From the foregoing facts the master finds as a conclusion of law that the complainant, the Union Special Machine Company, is entitled to recover of the defendant, Hyman Maimin, the sum of $560, profits, with interest from the date of filing this report, together with the costs, charges, and disbursements of this reference.

The master has covered (supra) the subject-matter of most of the findings of fact requested by counsel, which requests with his answers thereto are attached to this report.

May 17, 1910.                               Lewis H. Van Dusen, Master.

At the request of defendant's counsel, the master here notes the expenses of the reference, all of which expenses have been paid by complainant:

First bill of Guilbert & Lewis—stenographic services........... $ 69 00
Second bill of Guilbert & Lewis—stenographic services........ 102 00
Master's fee (agreed to by counsel for the respective parties; defendant's counsel reserving the right to argue to the court as to the proper disposition of the costs)...................... 750 00

$921 00

5/31/1910.                                   Lewis H. Van Dusen, Master.

Complainant's requests for findings of fact and answers thereto:

(1) Complainant's first request is affirmed in the master's fifth finding of fact (Report, p. 10).

(2) Complainant's second request is affirmed in the master's second finding of fact (Report, p. 9).

(3) Complainant's third request is covered on pages 25, 26, and 27 of master's report, including the master's sixth and seventh findings of fact, and is there affirmed.

Defendant's requests for findings of fact and answers thereto:

### On Issue of Infringement.

(1) A "twin needle" machine is as old as patent No. 245,997 dated 1881, and which expired over 12 years ago, and moreover had all the thread eyelets except added eyelet, c.

Refused as stated. A machine having twin needles is as old as patent No. 245,997 dated 1881 (which expired over 12 years ago), and such machine contained certain thread eyelets, but did not have the combination of the patent in suit.

(2) The specific type of twin needle machine shown and described in the patent 493,461 in suit, as the machine on which the thread-eyelet device of that patent is ingrafted, is identical with the twin needle machine of prior patent 344,493, dated 1886, and which expired in 1903, not only as to its stitch-forming mechanism, including its looper mechanism, but also as to its system of thread eyelets, save for the absence of eyelet, c, of the patent in suit; and that complainant owned this prior patent 344,493, and built and sold such machines prior to grant of patent 493,461, after which it applied, to all such machines it made and sold, the thread-eyelet device of the patent in suit.

Refused as stated. The point assumes that the patent in suit is for a mere addition, which is not the case as appears on pages 3, 29, and 30 of master's report; but, even if so, it is difficult to see how the machines could be identical when it appears from the evidence (R. 81, XQ. 74) that the improvements were made from time to time in the parts of the machines.

(3) That complainant is a manufacturer of sewing machines and makes and sells various types of twin needle sewing machines, including types A and B, to the former of which, alone, it applied the patented thread-eyelet device.

Refused as stated. The point assumes that complainant made and sold more than two styles of twin needle machines; whereas, it appears from the evidence that, while complainant had twenty or more styles and types of its own make (R. 203, XQ. 28), it manufactured and sold but two styles, A. and B, of the twin needle type (R. 200, XQ. 12). That portion of the point relating to the presence of the patent in suit on the complainant's "Twin Needle A" machines alone is in accordance with the conclusion arrived at by the master on page 26 of his report, and is, accordingly, affirmed.

(4) That complainant has been making and selling these "Twin Needle A" machines, as aforesaid, for 18 years or more, and prior to the application for and grant of the patent in suit, including at least several hundred of them, prior to the patent in suit and not containing the thread-eyelet improvement thereof.

The point is substantially correct and is affirmed. The evidence shows that complainant has been making and selling a "Twin Needle A" machine for 21 years or more (R. 206, XQQ. 47 and 48), and that it sold about 200 machines of this type during a period 4 or 5 years prior to 1891 without the thread-controlling device of the patent in suit (Report, p. 27).

(5) That it has always sold its machines to customers without any restrictions whatever, by reason of any patent, patents, or otherwise; in other words, when a machine was sold, it passed out of the monopoly or any patent or patents held or owned by complainant, and became the absolute property of the purchaser to make any lawful use of it he saw fit.

Affirmed.

(6) That complainant numbers all its machines in consecutive order, without any regard to variety of type or style, and never duplicates any number unless to replace an original machine destroyed by fire or otherwise. The numbers are put on the inside frame and also on the outside slide plate.

This point is partially covered in the master's fourth finding of fact (Report, p. 10), and, in connection with said finding, it is affirmed.

(7) That the defendant is a repairer of and dealer in secondhand sewing machines; makes no new machines; and, prior to and during the period covered by the decree, dealt in secondhand machines of some or all of the various classes made by the complainant, including "Twin Needle A" machines, which defendant bought in the open market from customers or mesne vendees of complainant, repaired them, when required, and resold them to his various customers.

This point is covered in the master's third finding of fact (Report, pp. 9 and 10), and, in connection with said finding, it is affirmed.

(8) There was no evidence submitted by either side that the complainant or any one else held any patents subsisting or in force since 1903 on any of the several types of machines on the right-hand column of Exhibit McNeil List; and there was an admission of record by complainant that the machine known as "Corders" or "Cording" machine were incapable of alteration into twin needle A machines.

Affirmed with the qualification that the admission as to "Corders" has no bearing on this reference for the reasons stated on page 13 of master's report.

(9) There was evidence that all the 38 machines sold by defendant were secondhand machines, bought by him in the open market, and repaired when needed; but the character and extent of repairs were not definitely shown. Witness Straub testified that machines were changes in type, but in the original record he denied that any thread eyelets were added.

Refused as stated.

### On Question of Profits.

(1) The complainant owned the prior patent No. 344,493 for the twin needle machine of the type on which the thread-eyelet improvement or addition of the patent 493,461 in suit is ingrafted as appears on the face of the latter; and, such earlier patent having expired (in 1903) previous to the period covered by this investigation, the defendant and the public generally were then and thereafter free to make, use, and sell the machine described therein.

Refused as stated. The point assumes that the patent in suit is for a mere addition which is not the case (Master's Report, pp. 3, 29, and 30). With this qualification, and with the insertion of the word "lawfully," between the words "to" and "make," the point is affirmed.

(2) The patent in suit is not for a sewing machine, nor even for the sewing machine shown and described in it, but appears on the face to be for a thread-controlling device applicable to a sewing machine, specifically the sewing machine of said prior patent 344,493.

This point is answered by a reference to the statements of the courts in this cause (161 Fed. 748, affirmed [C. C. A.] 165 Fed. 440) as to the character of the patent in suit.

(3) The twin needle machine of complainant's said prior patent 344,493, and that of its patent 493,461 in suit, are identical in respect of their thread-eyelet devices, save only that the device of the later patent (in suit) contains the additional eyelet, c, on the needle-arm lever, constituting, as set forth in

the patent, a new combination of thread-eyelet devices, imparting the additional function of controlling the thread to prevent breakage of it when sewing any materials of varying thickness, but not otherwise.

Affirmed with the qualification that the patent in suit is not for a mere addition.

(4) The complainant manufactured and sold this twin needle A machine, in its business, to the extent of at least several hundred, and during a period of at least three years, immediately prior to the application for and grant of the patent in suit, for the price or sum of $125 each; and since then, continuously, it has made and sold the same machine, with the thread-eyelet device of the patent in suit, applied thereto, at the same price or sum of $125 each.

This point is correct to the extent that the complainant manufactured and sold about 200 machines of the twin needle type during a period four or five years prior to 1891 (in which year the application for the patent in suit was filed), without the thread-controlling device of the patent in suit, for $125 each (Report, p. 27), and that from a period prior to the issue of the patent in suit, but not prior to the application, it made and sold continuously the twin needle A machines, always with the thread-controlling device of the patent in suit applied thereto, at the same price or sum of $125 each.

(5) The defendant's profits on the twin needle A sewing machines, bought second hand, repaired and resold by him, during the period under investigation, represent the earnings or advantage to him from the purchase, repair, and resale of the machines as an entirety; no evidence being submitted to the master, by either side, to apportion such profits or earnings as between so much of the machine as constituted the subject-matter of the description or the claims of the prior expired patent 344,493, and so much of it as constituted the subject-matter of the patent 493,461 in suit.

Affirmed.

(6) The evidence submitted to the master as to whether or not the presence or absence of the patented thread-eyelet device on the twin needle A machine influenced or affected the salability of the machine is very meager, and, though apparently conflicting, is not so in fact; the complainant's proofs in that regard being directed to its new machines, and the defendant's testimony to secondhand machines, the affirmative of the proposition being fairly sustained as to the former, and the negative of it equally well sustained as to the latter.

Refused.

For opinion sustaining the patent and finding infringement, see 161 Fed. 748, affirmed 165 Fed. 440.

Hector T. Fenton, for exceptions.
Joseph C. Fraley, opposed.

ARCHBALD, District Judge (specially assigned). The master has made an admirable report, justifying his conclusions by reference to the testimony, and correctly apprehending and applying the equitable principles involved. There is very little therefore to be said, except what may be necessary to show that the defendant's arguments are appreciated, even if they do not prevail.

The infringement of the defendant was deliberate, not to say flagrant, being persisted in after warning given by the filing of the bill. And it devolved on him therefore, in view of this, as well as the course pursued with regard to the making over of machines, to clear up any uncertainties growing out of what he did. He was a secondhand dealer, and it was his custom to buy up old machines of different kinds, and, after changing them about, and putting them in shape, to sell them again; those which are here particularly in issue being made

into and sold as twin needle A machines of the complainants' make. To effectually do this, he resorted to every means necessary to that end. The parts, if any were marred, were sent out to be rejapanned, the name of the complainants, at the same time, being regilded thereon; and, the numbers on the bodies of the machines having been filed off, new numbers were given them on the slide plates, to correspond with the class of machine into which they were respectively changed, a record of correct numbers, taken from genuine machines, being kept by the defendant in a book, so that there would be no mistake. The sales were also made to complainants' customers who wanted twin needle A machines, which were required for the particular work in which, as manufacturers, they were engaged; and essential to the identity, as well as the efficiency and salability of these machines, was the patented thread-controlling device in suit.

There were 38 machines of this character sold by the defendant after the bill was filed, for 37 of which, according to the master, he should account. And as to 11 of these there can be no doubt. These, according to the numbers on them, were not twin needle A machines when originally put out by the complainants, and, being equipped with the infringing device, when disposed of by the defendant, it was for him to show, if that would extenuate him, that they came into his hands in that shape. 161 Fed. 748, 750. It is true that there is little dependence to be put on the numbers of machines sold by the defendant, in view of the juggling with them, which went on in his shop; but it does not lie in his mouth to set this up. If he has created the confusion, it is for him to clear it away.

Neither can there be much question as to the six machines, not identified by number, but sold by the defendant as the same character of machine. There is no direct evidence as to just what these were when they were first put out, whether equipped with the eyelet of the patent or, not. But, except as they were so originally equipped, these, on their face, were infringing sales, and the defendant must justify them, if he can. He knew that he had no right to sell machines embodying the patent unless this was in fact the case. And in buying up secondhand machines he took that risk, against which he was bound to protect himself, by looking up their record and producing it at this time, if it lets him off. He had no right to perpetuate an infringement by passing it on, and he was required to see therefore that he did not. No numbers being given, it is impossible for the complainants to say in what shape these machines were when they passed out of their hands. This knowledge, however, was within reach of the defendant, the numbers being plainly marked on the body of the machine, in each case, and the result of not having it at this time falls on him. As already stated, these sales, as made, were apparently infringing sales, and the defendant is therefore liable for them, unless he explains them away, which he has not done.

There are five numbers duplicated in the record of the defendant's sales, one of which, no doubt, was a resale of the same machine. But the attempt fails to show this as to the other four. And, as the complainants never repeat a number, it is clear that these four machines

are not numbered as they originally were. It is of no account, there-fore, that the numbers on these machines correspond with those of machines, which, according to the complainant's record, were equip-ped by them at the start with the patented device. The effect of this is dispelled by the changing of numbers that went on, as already stated, in the defendant's shop. Nor is this in conflict with the posi-tion taken above, with regard to certain others sold by the defendant, which, if the numbers found on them were correct, were not originally twin needle A machines, as to which, as before intimated, the de-fendant cannot complain, if it is assumed, in the first instance, that this was the fact, leaving it to him to explain away the effect, if he can. As to the four duplicates now under consideration, however, the same reasoning applies as with regard to the group of six. When sold by the defendant, these machines were equipped with the pat-ented device, and he was thus called on to relieve himself from the imputation, otherwise properly indulged, that these were infringing sales. Instead of doing this, however, the course taken by him with regard to making over and fitting out of secondhand machines, cou-pled with the duplication of numbers which appears, only serves the more firmly to fasten the charge.

The same thing, in substance, is to be said with regard to the re-maining 16 machines. Judged by their numbers, these may not have been infringing machines, having apparently been originally equipped in the same way as when they were sold. But, as already pointed out, no significance is to be given to this, in view of what has been shown, and this is enforced by the record of where some of these machines turned up. No. 22,758, for instance, was disposed of by the defendant to the Russell Manufacturing Company, of Alexander City, Ala.: while the genuine machine of the same number was found in Galt, Ontario, Canada. No. 34,127, also, which figures four dif-ferent times on the defendant's list, was additionally sold about the same time that it was sold to the National Underwear Company, of Spring City, Pa., to an entirely different party at a different place. The master has called attention to other remarkable experiences with regard to alleged resales of particular machines. But, without going further into the matter, it is sufficient to say that the conclusions which he has reached on this branch of the case are fully sustained by the evidence, and are not to be disturbed.

The only other question is as to the profits secured by the infringe-ment. The master has allowed all that was obtained on the sales of made-over machines. It is claimed that this goes far beyond any-thing contributed by the use of the patented device, to which the complainants are to be confined. But this contention fails to give ef-fect to the part which the addition of the eyelet in question played in making sales. The profit derived from the infringement is not measured merely by the increased value of the machines with the eyelet on, above what they might possibly have sold for without it, which, in a way, was the same. The eyelet was the final touch in the transformation by the defendant of the secondhand machines, which he had picked up, into twin needle A machines, as turned out and sold. And as the parties, to whom he disposed of these ma-

chines, on account of the work for which they were particularly adapted, in which these parties were engaged, wanted this particular kind of machine or none at all, it was the patented combination that practically, in each instance, sold the machine. It is this difference in salability that determines the contribution made by the addition of the infringing feature, or the patented combinatoin, of which it was a controlling part; and the case thus falls within the familiar rule that, where the patented feature substantially effects the sale, the infringer must account for the entire profits made therefrom. Westinghouse v. New York Air Brake Co., 140 Fed. 545, 72 C. C. A. 61.

The exceptions are overruled, and the report of the master is confirmed.